## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

HARFORD MUTUAL INSURANCE
COMPANY
200 NORTH MAIN STREET
BEL AIR, MARYLAND 21014

    *Plaintiff*

             v.                  Civil Action No.

STARSTONE NATIONAL INSURANCE
COMPANY
101 HUDSON STREET
JERSEY CITY, NEW JERSEY 07302

    *Defendant*

## COMPLAINT

Plaintiff, Harford Mutual Insurance Company ("HMIC"), by its undersigned counsel, files this Complaint for Declaratory Judgment pursuant to 28 U.S.C. §§ 2201-2202 and F.R.C.P. 57 against Defendant StarStone National Insurance Company ("StarStone"), and as grounds therefore, states as follows:

## NATURE OF THE CASE

1. This is a civil action seeking declaratory relief arising out of an actual and justiciable controversy among the parties in connection with a priority of insurance coverage dispute.

2. Both HMIC and StarStone afforded excess liability insurance to an entity known as Residential One, LLC ("Res One"), a property management company.

4863-3495-0640.4

3. Res One provided property management services at an apartment complex known as "Friendly Gardens" located in Silver Spring, Maryland.  As a result of a fire and explosion at the apartment complex on March 3, 2022 caused by the alleged accidental severing of a natural gas line by a Res One employee, numerous tenants sustained significant physical injuries and property damage, including serious burn injuries.

4. Primary insurance coverage afforded by HMIC in the amount of $2M has been fully exhausted in settling numerous tenant injury claims, such that the need for excess insurance coverage has been triggered.

5. A priority of coverage dispute has arisen among the parties regarding whether HMIC's "Commercial Umbrella" policy or StarStone's "Following Form Excess Liability" policy has been triggered.

6. Notwithstanding its contractual obligations, StarStone has refused to contribute to any Friendly Gardens tenant settlements to date, which has required HMIC to unilaterally fund approximately $5.4M in settlements under its Commercial Umbrella excess policy to protect the interests of Res One.

7. Indeed, StarStone has taken the position that until the limits of HMIC's Commercial Umbrella policy have been fully exhausted, then its policy has not been triggered and it has no obligation to fund any settlements of claims brought by the tenants of Friendly Gardens.

8. Because the terms of the applicable excess insurance policies and controlling law makes clear that the StarStone excess coverage must be fully exhausted before the HMIC

4863-3495-0640.4

Commercial Umbrella policy is triggered, HMIC brings this Complaint for declaratory relief in order to resolve an ongoing, actual and justiciable controversy regarding the priority of excess coverage obligations among the parties.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between Plaintiff and Defendant and the matter in controversy is greater than $75,000.

10. Plaintiff HMIC is a mutual commercial property and casualty insurer incorporated in Maryland, with a principal place of business located at 200 North Main Street in Bel Air, Maryland.

11. Defendant StarStone is a surplus and excess lines liability insurer incorporated in Delaware, with a principal place of business located at 101 Hudson Street in Jersey City, New Jersey.

12. This court has personal jurisdiction over the Defendant because at all times relevant, StarStone engaged in substantial business activities in Maryland, including but not limited to the issuance of insurance policies to insureds located in Maryland.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because all of the material events giving rise to this lawsuit occurred in Maryland.  Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because StarStone is subject to this Court's personal jurisdiction.

4863-3495-0640.4

**THE UNDERLYING LOSS**

14. The Friendly Gardens apartment complex, constructed in 1971, is located on Laytonsville Road in Silver Spring, Maryland.  The apartment complex, consisting of several adjacent low rise apartment buildings, is owned by Friends Non-Profit Housing, Inc.  Pursuant to a management contract with the property owner, at all times relevant Res One provided property management services for the apartment complex.

15. On March 3, 2022, a maintenance employee of Res One went to apartment unit number 101 at the building located at 2405 Laytonsville Road in order to repair a clogged sink drain, and in so doing accidentally severed a natural gas pipe.  As a result, an explosion and resulting fire occurred causing significant damage to the complex, and physical injuries to numerous tenants.  Due to the extensive nature of the incident, approximately 150 local firefighters and EMTs responded to the scene.  Several residents required hospital care.

16. As a result of the incident, numerous tenants have asserted property damage and personal injury claims against Res One and the owner of the apartment complex.  A representative of Res One notified HMIC and StarStone in writing on August 30, 2024 that Res One recognized that certain outstanding tenant personal injury claims were "extremely dangerous" and demanded that StarStone and HMIC "resolve these claims now".

17. As of the date of this filing, settlements totaling $7,379,326.72 have been paid out exclusively by HMIC to settle such claims, with many claims still unresolved.  HMIC has been forced to unilaterally contribute to these settlements utilizing its Commercial Umbrella policy because notwithstanding the contractual obligations StarStone owes

pursuant to the contract of excess insurance it afforded to Res One, it has to date contributed nothing towards settlement of these claims, and has instead taken the position that it has no obligation to contribute to the settlement of any tenant claims until the full limits of HMIC's $10M Commercial Umbrella policy have been exhausted.

## THE PRIMARY AND EXCESS LIABILITY INSURANCE COVERAGE AFFORDED TO RES ONE

18. There are two separate primary commercial general liability policies, both afforded by HMIC, that are applicable to this loss.

19. First, pursuant to HMIC Policy No. 9203196 issued to the "Friends Non-Profit Housing Inc. T/A Friendly Gardens Apartments", the owner of the apartment complex was afforded $1M in primary coverage on a per occurrence basis covering the period May 1, 2021 – May 1, 2022.  Because the definition of "Who Is An Insured" in that primary policy included any entity operating as a "real estate manager" for the named insured, Res One also qualified as an insured under that policy.

20. Second, pursuant to HMIC Policy No. 9210741, "Residential One, LLC" has its own general liability policy and was afforded $1M in primary coverage on a per occurrence basis covering the period February 12, 2022 – February 12, 2023.

21. Because the total tenant claim settlements paid out to date under the two HMIC primary policies well-exceed the total combined primary limits of $2M, both of these primary policies have been fully exhausted, thus triggering Res One's excess coverage.

4863-3495-0640.4

22. Res One is also covered by two separate excess policies of liability coverage for the fire and explosion loss at Friendly Gardens.

23. Res One is insured under a StarStone "Following Form Excess Liability" policy (Policy No. 77607P227ALI) with limits of $5M covering the period February 12, 2022 – February 12, 2023, attached hereto as Exhibit A.  The sole underlying, primary policy referenced in the StarStone "Schedule of Followed Policies" is the HMIC primary policy issued to Res One referenced in paragraph 20  of this Complaint.

24. Res One also qualifies as an insured under the excess coverage afforded by an HMIC "Commercial Umbrella" policy afforded to Friends Non-Profit Housing Inc. (Policy No. CU10402382) with limits of $10M covering the period May 1, 2021 – May 1, 2022, attached hereto as Exhibit B.

25. Where two separate insurers provide coverage to the same insured for a given loss, the determination as to the priority of coverage among them is determined by applying the language contained in an "Other Insurance" clause, a standard liability policy provision. "Other Insurance" clauses are almost universally included in such policies and are drafted to avoid multiple insurers paying for the same loss by making one policy excess to another in circumstances where several policies may cover the same risk.

26. The StarStone policy is wholly unique, however, in that it contains no "Other Insurance" clause.

27. The HMIC Commercial Umbrella policy does contain an "Other Insurance" clause, which expressly provides that "[t]his insurance is excess over, and shall not contribute

with any other insurance, whether primary, excess, contingent or on any other basis." The HMIC Commercial Umbrella "Other Insurance" clause further provides that HMIC's excess coverage obligation is not triggered until the "total amount that all such other insurance would pay for the loss" is exhausted.

28. The foregoing "Other Insurance" language contained in the HMIC Commercial Umbrella is deemed an "excess clause" under Maryland law, which renders the HMIC Commercial Umbrella policy last in the priority of payment hierarchy.

29. StarStone has nevertheless wrongfully asserted that its excess policy is last in the priority hierarchy and has refused to participate in the settlements of tenant claims from its excess policy settlements, thereby creating this coverage dispute and requiring HMIC to pursue declaratory relief.

## THE EXISTING TENANT CLAIM SETTLEMENTS

30. To date, HMIC has paid out $7,379,326.72 to settle numerous tenant claims resulting from the March 3, 2022 fire and explosion loss at Friendly Gardens, while many additional claims remain currently unresolved.

31. Of that amount, $2M has been funded by the two HMIC primary general liability policies referenced in paragraphs 19-20 of this Complaint, which has served to fully exhaust all of the primary coverage.  Accounting for the primary policy funding, HMIC has thus been forced to unilaterally pay $5,379,326.72 in settlements from its Commercial Umbrella policy, an amount that exceeds the $5M coverage limits of the StarStone excess policy.

32. StarStone on the other hand has contributed nothing towards the tenant settlements, and has refused to do so, improperly arguing that its excess coverage is last in the payment priority hierarchy.

## THE PRIORITY OF EXCESS COVERAGE DISPUTE BETWEEN HMIC AND STARSTONE

33. Because the StarStone excess policy has no "Other Insurance" clause, the HMIC Commercial Umbrella's "Other Insurance" excess clause controls, and makes clear that the HMIC Commercial Umbrella policy is last in the priority of coverage hierarchy.

34. The unique nature of the StarStone excess policy, in not including its own "Other Insurance" clause, and the legal ramifications of that omission was specifically addressed in *Through Transport Mutual Ins. Assoc. Ltd. v, StarStone Nat. Ins. Co.*, 628 F. Supp. 3d 1087 (D. Kan. 2022), wherein the court concluded that Starstone's lack of an "Other Insurance" clause in its follow form excess policy was fatal to its attempt to foist a coverage obligation upon another insurer.

35. Nevertheless, StarStone has taken the position here that it may utilize "Other Insurance" language from the primary policy afforded by HMIC to Res One, which includes an endorsement entitled "Real Estate Property Managed".  This endorsement to the primary policy includes an "Other Insurance" provision, which states that if Res One has liability "as a real estate manager" the ***primary coverage*** becomes "excess over any other valid and collectible insurance available to you, whether such insurance is primary or excess."

4863-3495-0640.4

36. Such a clause in a primary liability policy is considered a "coincidental excess" clause, and has been universally rejected as a legally effective mechanism for a primary insurer to utilize in seeking to become secondary or excess coverage behind a "true excess" policy like the HMIC Commercial Umbrella policy.

37. Thus, even if StarStone could rely upon this "coincidental excess" clause from the primary policy in the absence of its own such clause, such language is legally ineffective to circumvent StarStone's priority of coverage obligation.

38. Moreover, the "Other Insurance" language in the primary policy that StarStone seeks to rely upon includes a "Method of Sharing" provision, which expressly provides that "[i]f any other insurance does not permit contribution by equal shares, we will contribute by limits" on a pro rata basis. Such a provision is known as a "pro rata" clause.

39. By contrast, the "Other Insurance" clause in the HMIC Commercial Umbrella policy provides that the insurance afforded therein shall be "excess over and shall not contribute with any other insurance". Indeed, the HMIC Commercial Umbrella has no "Method Of Sharing" provision whatsoever, rendering the provision an "excess clause".

40. Under Maryland law, a policy with an excess clause always prevails over one with a pro rata clause, meaning that the policy containing the excess provision is always deemed last in the priority of payment hierarchy.

41. Despite repeated demand by HMIC, StarStone has refused and continues to refuse to adhere to its coverage obligations, and has failed to contribute to the tenant settlements or

4863-3495-0640.4

reimburse HMIC for the settlement funds it has paid from the Commercial Umbrella policy that should have be borne exclusively by StarStone.

42. Because the settlement payments HMIC has made to date in resolving certain tenant claims from the Commercial Umbrella policy exceed the $5M limits of the StarStone policy, HMIC is entitled to reimbursement from StarStone in the amount of $5M, its excess policy limits.

## REQUEST FOR RELIEF

Plaintiff Harford Mutual Insurance Company respectfully requests that the court enter judgment in its favor and against Defendant StarStone National Insurance Company, as follows:

A. Issue a declaration, order and judgment holding that StarStone is obligated to fund all tenant settlements subsequent to the exhaustion of all primary coverage available to Res One up to the maximum of its policy limit of $5M.

B. Issue a declaration, order and judgment that the HMIC Commercial Umbrella policy is last in the priority of payment hierarchy as between the excess coverages afforded by HMIC and StarStone.

C. Issue a declaration, order and judgment holding that StarStone is obligated to repay HMIC $5M, StarStone's policy limit, as reimbursement to HMIC for settlement funds previously paid by HMIC under its excess coverage that were the obligation of StarStone.

D. Issue a declaration, order and judgment for such other and further relief as this Court deems just and proper.

4863-3495-0640.4

**ICE MILLER, LLP**
Attorneys for Plaintiff

*Edward M. Buxbaum*
—————————————————
Edward M. Buxbaum, Federal Bar
No 05015
100 Light Street Suite 1350
Baltimore, MD 21202
Telephone (410) 951-5871
Facsimile (410) 951-5879
Edward.buxbaum@icemiller.com

*Michael P. Collins*
—————————————————
Michael P. Collins, Federal Bar No
20805
100 Light Street Suite 1350
Baltimore, MD 21202
Telephone (410) 951-5872
Facsimile (410) 951-5879
Michael.collins@icemiller.com

4863-3495-0640.4