### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

HARFORD MUTUAL INSURANCE
COMPANY,

   *Plaintiff*,

  v.

STARSTONE NATIONAL INSURANCE
COMPANY,

   *Defendant.*

         Civil No.: 1:24-cv-03019-JRR

### MEMORANDUM OPINION

Pending before the court are Plaintiff Harford Mutual Insurance Company's ("HMIC") Supplemental Memorandum at ECF No. 28 and Defendant StarStone National Insurance Company's ("StarStone") Supplemental Memorandum at ECF No. 29; the court construes these memoranda as supplemental motions for summary judgment ("HMIC's Motion" and "StarStone's Motion," respectively). Following the court's memorandum opinion and order denying the parties' cross motions for summary judgment and holding that the two Other Insurance clauses at issue were irreconcilable and repugnant to one another, the court directed the parties, on their request, to submit supplemental briefs on the issue of allocation of liability. (ECF Nos. 20, 22, 23.) The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons that follow, by accompanying order, HMIC's Motion will be granted, and StarStone's Motion will be denied.

I.     **UNDISPUTED FACTS**

The court incorporates herein the undisputed facts as set forth in its memorandum opinion

at ECF No. 20:[1]

> Defendant and Plaintiff both provide excess liability insurance to Res One, a property management company which provided property management services at Friendly Gardens, an apartment complex located in Silver Spring, Maryland. ECF No. 1 ¶¶ 2–3. On March 3, 2022, a fire and ensuing explosion occurred, caused by the alleged accidental severing of a natural gas line by a Res One employee. *Id.* ¶ 3. As a result of this incident, numerous tenants sustained significant physical injuries, including serious burn injuries, as well as damage to their property. *Id.* Plaintiff afforded Res One primary insurance coverage through two separate policies in the combined total coverage amount of two million dollars. *Id.* ¶ 4. Specifically, Res One was the Named Insured in one of Plaintiff's primary policies, and also qualified as an Insured under the primary policy Plaintiff afforded to Friendly Gardens. *Id.* ¶¶ 19, 20.
>
> Plaintiff's primary insurance coverage has been fully exhausted in funding various tenant settlements, such that need for excess insurance coverage has been triggered. ECF No. 1 ¶ 4. There are also two separate excess policies applicable to this loss. *Id.* ¶ 22. Defendant afforded $5M in excess coverage to Res One, and Plaintiff separately provided $10M in excess coverage under the Umbrella afforded to Friendly Gardens, for which Res One also qualified as an Insured. *Id.* ¶¶ 23, 24.
>
> Accordingly, there exists overlapping excess coverage, and a priority of coverage dispute has arisen between the parties as to whether Plaintiff's Umbrella policy or Defendant's "Following Form Excess Liability" policy has been triggered. ECF No. 1 ¶ 5. Specifically, Defendant maintains that its Following Form Excess Liability policy was not triggered, and it has no obligation to fund any settlements of tenant claims brought against Friendly Gardens and Res One until Plaintiff's Umbrella policy has been fully exhausted. *Id.* ¶ 7. Defendant has thus refused to contribute to any tenant settlements. *Id.* ¶ 6. Defendant's refusal has required Plaintiff to unilaterally fund approximately 5.4 million dollars in tenant settlements to date under its Umbrella policy in order to protect the interests of Res One. *Id.* ¶ 6. Plaintiff brought this declaratory action in order to resolve the ongoing priority of payment dispute among the parties.
>
> A.     **The Underlying Loss and Tenant Claim Settlements**
>
> The Friendly Gardens apartment complex was built in 1971 and is located on Laytonville Road in Silver Spring, Maryland. ECF No. 1 ¶ 14. It consists of several adjacent low-rise apartment buildings. *Id.* ¶ 14. The apartment complex is owned

---

[1] In the prior summary judgment briefing, the parties agreed to the material undisputed facts as set forth herein. (ECF No. 10 at pp. 3–6; ECF No. 16-1 at p. 4.)

by Friends Non-Profit Housing, Inc. *Id.* Pursuant to a management contract with the property owner, Res One provided property management services for the apartment complex. *Id.* ¶ 14. On March 3, 2022, a maintenance employee of Res One went to apartment unit number 101 at the building located at 2405 Laytonsville Road in order to repair a clogged sink drain, and in so doing accidentally severed a natural gas line. *Id.* ¶ 15. As a result, an explosion and resulting fire occurred causing significant damage to the complex, and physical injuries to numerous tenants. *Id.* ¶ 15.

Due to the extensive nature of the incident, approximately 150 local firefighters and other emergency responders were called to the scene, and several residents required hospital care. *Id.* ¶ 15. Subsequent to this incident, numerous tenants have asserted property damage and personal injury claims against Res One and Friends Non-Profit Housing Inc. *Id.* ¶ 16. A representative of Res One notified both Plaintiff and Defendant in writing that Res One recognized that certain outstanding tenant personal injury claims were "extremely dangerous" and demanded that Defendant and Plaintiff "resolve these claims now." *Id.* ¶ 16. While Plaintiff has acted to protect the interests of its Insured, Defendant has not, and has refused to fund any settlements to date. *Id.* ¶ 6.

As of the filing of Plaintiff's Complaint in this Court, settlements totaling $7,504,326.72 have been paid out exclusively by Plaintiff to settle such claims, with many claims still unresolved.[2] ECF No. 1 ¶ 17. Of that amount, 2 million dollars has been funded by the two applicable Plaintiff primary general liability policies. *Id.* ¶ 31. Therefore, accounting for the funding from the primary policies, Plaintiff has been forced to fund $5,504,326.72, in settlements to date from its Umbrella policy, an amount that exceeds the 5 million dollars coverage limits of Defendant's excess policy. *Id.* ¶ 31. Plaintiff has been forced to unilaterally contribute to these settlements utilizing its Umbrella policy because Defendant has not contributed anything towards settlement of these claims. *Id.* ¶¶ 6, 17. Instead, Defendant has taken the position that it has no obligation to fund any tenant settlements until the limits of Plaintiff's $10M Umbrella policy have been fully exhausted. *Id.* ¶¶ 7, 17.

### B.    The Insurance Policies Afforded to Res One

#### 1.    *The Primary Coverage*

Plaintiff issued two separate primary commercial general liability policies that afforded coverage to Res One for this loss. ECF No. 1 ¶ 18. Specifically, Plaintiff issued Policy No. 9203196 to the "Friends Non-Profit Housing Inc. T/A Friendly Gardens Apartments". *Id.* ¶ 19. Accordingly, the owner of the apartment complex, Friends Non-Profit Housing Inc., was afforded $1M in primary coverage on a per occurrence basis covering the period May 1, 2021 – May 1, 2022. *Id.* ¶ 19. Res

---

[2] Based on the Affidavit of Lauren Paige offered by HMIC, this amount now totals $8,491,826.72, two million dollars of which have been funded by HMIC's primary general liability policies. (Paige Aff., ECF No. 28-1 ¶ 4.) StarStone does not dispute this representation.

One also qualified as an insured under this primary policy because the definition of "Who Is An Insured" included any entity operating as a "real estate manager" for the named insured. *Id.* ¶ 19. Plaintiff separately issued Policy No. 9210741 to "Residential One, LLC". *Id.* ¶ 20. Accordingly, Res One has its own primary general liability policy that also afforded $1M in primary coverage on a per occurrence basis covering the period February 12, 2022 – February 12, 2023. *Id.* ¶ 20. As such, the total combined primary limit of Plaintiff's two policies is $2M. *Id.* ¶ 21. The total tenant claim settlements paid out to date under Plaintiff's two primary policies well exceed this $2M threshold, and thus, both of these primary policies have been fully exhausted, triggering Res One's excess coverage. *Id.* ¶ 21.

### 2. *The Excess Coverage*

Res One also has two separate excess policies of liability coverage applicable to this loss. ECF No. 1 ¶¶ 22-24. Defendant[] issued Policy No. 77607P227ALI to Res One which is a "Following Form Excess Liability" policy with limits of $5M covering the period February 12, 2022 – February 12, 2023. (ECF No. 1-3 at p. 3.) In Defendant's "Schedule of Followed Policies", the only underlying primary policy referenced is Plaintiff's primary policy issued to Res One, i.e., Policy No. 9210741. (ECF No. 1-3 at p. 15.) Res One also qualifies as an Insured under Plaintiff's Umbrella excess coverage afforded to Friends Non-Profit Housing Inc., Policy No. CU10402382. (ECF No. 1-4 at pp. 3, 25.) The Umbrella, covering the period May 1, 2021 – May 1, 2022, has a $10M limit of coverage. (ECF No. 1-4 at p. 7.)

(ECF No. 20 at pp. 1–4.)

In its previous opinion, the court concluded that the parties' respective Other Insurance clauses are repugnant to one another; neither policy is excess to the other as a matter of law. *Id.* at p. 19. Importantly, however, as the parties did not address allocation of liability in the event their excess clauses were found to be irreconcilable, the court declined to make such a declaration. *Id.* Thereafter, the parties submitted a Joint Status Report in which they advised the court they are unable to reach resolution regarding apportionment of losses previously paid out exclusively by HMIC, and proposed simultaneous briefing "for the Court's consideration and issuance of an additional Declaration setting forth how the loss previously paid by HMIC shall be shared." (ECF No. 22 ¶ 5.) The court therefore ordered briefing per the parties' suggestion; that supplemental briefing is now ripe for the court's consideration and ruling.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a factfinder for resolution at trial.[3] *Id*. at 249. Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). A party "need[s] to present more than their own unsupported speculation and conclusory allegations to survive." *Robinson v. Priority Auto. Huntersville, Inc.*, 70 F.4th 776, 780 (4th Cir. 2023). Further, "[u]nder this standard, 'the mere existence of a scintilla of evidence' in favor of the non-movant's position is insufficient to withstand the summary judgment motion." *Wai Man Tom v. Hospitality Ventures, LLC*, 980 F.2d 1027, 1037 (4th Cir. 2020) (quoting *Anderson*, 477 U.S. at 252).

---

[3] "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citations omitted). In so doing, "the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." *Id.* (citations omitted); *see Doe v. Morgan State Univ.*, 544 F. Supp. 3d 563, 574 (D. Md. 2021) (same). Because the parties' arguments depend on resolution of the singular issue of allocation of liability, the court focuses its analysis accordingly.

In undertaking this inquiry, the court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). The court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Adin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the factfinder to resolve factual disputes, including issues of witness credibility. *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014).

## III.    ANALYSIS

As an initial matter, the court again recognizes that the parties agree Maryland law governs their dispute. (ECF Nos. 10-1, 16-1, 28, 29.) "As every first-year law student learns, the *Erie* doctrine provides that a federal court sitting in diversity applies federal procedural rules and state substantive rules." *Moreno v. Bosholm*, 151 F.4th 543, 559–60 (4th Cir. 2025) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)); *see Francis v. Allstate Ins.*, 709 F.3d 362, 369 (4th Cir. 2013) (discussing same). Accordingly, the court turns to Maryland law to determine the applicable law; and there is no dispute that Maryland law is the substantive law applicable to this dispute.[4]

The court now considers how the losses previously paid out by HMIC should be apportioned where the court has concluded that the two Other Insurance clauses are repugnant to one another and neither policy is excess to the other. The court refers to its previous opinion in discussing the law at issue. This case presents an issue of "double coverage" or a situation where

---

[4] Absent a contractual choice of law provision, "[i]n insurance contract disputes, Maryland follows the principle of *lex loci contractus,* which applies the law of the jurisdiction where the contract was made." *Perini/Tompkins Joint Venture v. Ace Am. Ins. Co.*, 738 F.3d 95, 100 (4th Cir. 2013) (citing *Allstate Ins. Co. v. Hart,* 327 Md. 526, 529 (1992)).

more than one insurance policy covers a claim. *Nat'l Indem. Co. v. Cont'l Ins. Co.*, 61 Md. App. 575, 578 (1985). Insurance policies often contain clauses, called "Other Insurance" clauses, that "limit the insurer's liability based on the availability of other coverage." *Id.* "The clauses are meant to allocate responsibility for a payment in cases of overlapping coverage." *Jewish Fed'n of Greater Washington, Inc. v. Cincinnati Ins. Co.*, No. CV DKC 23-1816, 2025 WL 3496190, at *4 (D. Md. Dec. 5, 2025). There are three general types of Other Insurance clauses: escape clauses, excess clauses, and *pro rata* clauses.

> An *escape clause* generally states that the insurer will not pay benefits under its policy when other insurance exists to compensate the claimant. In lease situations, especially those concerning commercial vehicles, a common limitation is an *excess clause.* This provision specifies that the insurance company will make payment on the policy so long as: 1) it becomes liable only after the claimant has recovered the sums available under the other policies involved, and 2) it pays an amount equal to the difference between the total insurance paid by the other companies and the limit of its own policy. In effect, if Policy A provides $100,000 insurance, and Policy B provides $150,000, then Policy B would pay $50,000 pursuant to an excess clause. Finally, a *pro rata clause* limits an insurer's liability to its proportionate share in relation to all available coverage.

*Nat'l Indem. Co.*, 61 Md. App. at 578. (citing 8A J. Appleman*, Insurance Law and Practice* § 4907.65 at 364 (rev. ed. 1981)). The court examines the "specific language of the policies" to determine the type of other insurance clause involved. *Id*. (quoting *Consol. Mut. Ins. Co. v. Bankers Ins. Co.*, 244 Md. 392, 396 (1966)).

The Supreme Court of Maryland "has clearly defined a policy to address 'other insurance' clause conflicts in double coverage cases." *Nolt v. U.S. Fid. & Guar. Co.*, 329 Md. 52, 60 (1993). The court first determines "the type of other insurance clause involved—escape, excess, or pro rata," and then applies the applicable rule to resolve the conflict at issue. *Nat'l Indem. Co.*, 61 Md.

7

App. at 579.  This court previously determined that the two Other Insurance clauses at issue are excess clauses.  (ECF No. 20.)  It now turns to the second step.

The applicable rule for resolution of the conflict provides that "[w]here both policies provide for excess coverage only, liability is shared equally by the insurers." *Nolt*, 329 Md. at 60–61 (quoting *Ryder Truck Rental, Inc. v. Schapiro & Whitehouse, Inc.,* 259 Md. 354, 364–65 (1970)); *see also, e.g.*, *Atl. Crane Serv., Inc. v. S.G. Marino Crane Serv., Inc.*, No. CIV. JFM-99-2681, 2001 WL 21223, at *2 (D. Md. Jan. 8, 2001) (discussing same); *Centennial Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 71 Md. App. 152, 158 (1987) (discussing same); *Nat'l Indem. Co.*, 61 Md. App. at 579 (discussing same).  Accordingly, where this court has already found the two excess Other Insurance clauses are repugnant to one another, and neither policy is excess to the other as a matter of law, under Maryland law the liability at issue here is ordinarily "shared equally by the insurers." *Nolt*, 329 Md. at 60–61, *supra*.

StarStone acknowledges this Maryland law-based rule but nonetheless argues for application of a different rule, as discussed by the Fourth Circuit in an opinion concerning West Virginia law.  (ECF No. 29 at pp. 8–9.)  Specifically, the cited Fourth Circuit decision provides:

> In cases where there are actual conflicts in the language of the clauses, or where a literal application of the clauses could leave the insured without coverage, various methods for resolving the issue have gained acceptance. Some courts find conflicting other-insurance clauses to be "mutually repugnant" and thus unenforceable and require the insurers to bear pro-rata shares of the total liability. *See, e.g., State Farm,* 490 F.2d at 410; *Hoffmaster v. Harleysville Ins. Co.,* 441 Pa. Super. 490, 657 A.2d 1274, 1277 (1995). Other courts, however, resolve the conflicts by considering the "total policy insuring intent." Under this approach, where conflicting other-insurance clauses "cannot be resolved by the logic of their terms, the insurer whose coverage was effected for the primary purpose of insuring the particular risk should be primarily liable for payment, with the insurer whose coverage was most incidental to risk being liable last." 15 Russ & Segalla, *Couch on Insurance* § 219:49; *see, e.g., Integrity Mut. Ins. Co. v. State Auto.*

> *& Cas. Underwriters Ins. Co.,* 307 Minn. 173, 239 N.W.2d 445,
> 446–47 (1976).

*Horace Mann Ins. Co. v. Gen. Star Nat. Ins. Co.*, 514 F.3d 327, 331 (4th Cir. 2008).

Based on the foregoing, StarStone argues:

> [R]ather than applying a formula, a court using the total insuring
> intent approach considers the available coverage as a whole, and
> determines which of the insurers' coverage "was effected for the
> primary purpose of insuring the particular risk." *Id*, quoting 15 Russ
> & Segalla, Couch on Insurance § 219:49. Using the total insuring
> intent approach, a court examines the policies to determine the
> primary function of each policy, as well as the primary risks upon
> which the premiums were based. Integrity Mut. Ins. Co., supra, 239
> N.W. 2d at 446. Though this is not presently how Maryland law
> addresses the particular situation of irreconcilable Other Insurance
> clauses, it is more up-to-date than the formulaic approach, and it is
> much more in line with the principles which Maryland courts
> generally use to resolve coverage disputes.

(ECF No. 29 at p. 9.)

StarStone, however, neglects that this court is not at liberty to disregard Maryland law.[5]

As the Fourth Circuit explained in *Horace Mann*:

> Because we are sitting in diversity, our role is to apply the governing
> state law, or, if necessary, predict how the state's highest court
> would rule on an unsettled issue. *See Private Mortgage Inv. Servs.,
> Inc. v. Hotel & Club Assocs., Inc.,* 296 F.3d 308, 312 (4th Cir.2002).
> Accordingly, where there is West Virginia law addressing a
> particular question, we will follow it. But if the West Virginia courts
> have not addressed an issue, we will look to generally accepted
> principles of insurance law, because we believe that West Virginia's
> Supreme Court of Appeals would adopt those principles as its own.

*Horace Mann Ins. Co.*, 514 F.3d at 329.  Maryland courts have addressed the precise issue present

here, which StarStone acknowledges.  (ECF No. 29 at pp. 8–9.)  This court may not disregard

---

[5] StarStone admits that it asks the court to apply a rule that "is not presently how Maryland law addresses the particular situation" at issue here.  (ECF No. 29 at p. 9.)

9

Maryland law simply because, as StarStone contends, another approach "is more up-to-date."[6] *Id.* at p. 9. "[A] federal court sitting in diversity is not authorized to revise state decisional law. Any change must be effected by the Supreme Court of [Maryland] or by [Maryland's] legislators." *Penn v. 1st S. Ins. Servs., Inc.*, 324 F. Supp. 3d 703, 708 n.3 (E.D. Va. 2018) (regarding Virginia law); *see also Burris Chem., Inc. v. USX Corp.*, 10 F.3d 243, 247 (4th Cir. 1993) ("Under *Erie Railroad v. Tompkins,* . . . the federal courts sitting in diversity rule upon state law as it exists and do not surmise or suggest its expansion."); *Guy v. Travenol Lab'ys, Inc.*, 812 F.2d 911, 917 (4th Cir. 1987) ("The point is as simple as it is unavoidable: in diversity cases, when state law provides an answer, federal courts must abide by that law. . . . In applying state law, federal courts have always found the road straighter and the going smoother when, instead of blazing new paths, they restrict their travels to the pavement.").

Further, StarStone's arguments in support of the court jettisoning the applicable rule are not otherwise compelling. First, StarStone argues that its proposed approach—the total insuring intent approach discussed in *Horace Mann*—"is much more in line with the principles which Maryland courts generally use to resolve coverage disputes" because it conforms to "basic principles of contract interpretation." (ECF No. 29 at p. 9.) This argument may be persuasive in the absence of Maryland law squarely addressing this precise question, but it is not persuasive where Maryland courts, well-aware of basic principles of contract interpretation which StarStone does not argue have materially changed in recent history, adopted the policy in question.

---

[6] Of note, in support of its argument, StarStone directs the court to a decision out of the Supreme Court of Minnesota referenced in *Horace Mann—Integrity Mutual Insurance Company v. State Automobile & Casualty Underwriters Insurance Company*, 307 Minn. 173 (1976). (ECF No. 29 at pp. 8–9.) In discussing rules regarding mutually repugnant excess clauses, in 1994 the Appellate Court of Maryland recognized a "small body of law to the contrary" of the majority rule, including a decision from the Supreme Court of Minnesota that reiterates the *Integrity Mutual* principles. The Appellate Court of Maryland rejected the reasoning in those cases as "not persuasive" and not consistent with Maryland law. *Universal Underwriters Ins. Co. v. Allstate Ins. Co.*, 99 Md. App. 595, 603–604 (1994).

Second, StarStone contends that the *Nolt* court "concludes that liability should be shared equally only after analyzing the insuring intent behind the policies as considered together." (ECF No. 31 ¶ 5.) StarStone's argument neglects the posture of this case and the appellate issues before the *Nolt* court. The *Nolt* court's analysis turned on the specific appellate issues there—whether there was sufficient evidence to support the jury's verdict and the verdict's impact on whether a conflict between the other insurance clauses existed. *Nolt*, 329 Md. at 582–83. This court has already held that the two excess Other Insurances clauses are in conflict and repugnant to one another. Stated differently, the court has already addressed the first part of the inquiry—interpreting the policies at issue to determine the type of insurance clauses at issue (*e.g.,* escape, excess, and *pro rata*) and identifying them to be in conflict.[7] *See Nat'l Indem. Co.*, 61 Md. App. at 579, *supra*. The sole remaining issue is the allocation of liability; and the established rule in Maryland—that *Nolt* recognizes—is that "[w]here both policies provide for excess coverage only, liability is shared equally by the insurers."[8] *Nolt*, 329 Md. at 60–61.

Accordingly, where the two excess Other Insurance clauses are mutually repugnant, liability for the settlements to be covered by the excess policies at issue "is shared equally by the insurers." *Nolt*, 329 Md. at 60–61, *supra*.

## IV.   CONCLUSION

For the reasons set forth herein, by separate order, HMIC's Motion will be granted, and StarStone's Motion will be denied.

---

[7] StarStone did not file a motion for reconsideration pursuant to Federal Rule of Civil Procedure 54(b).

[8] Further, contrary to StarStone's contention that *Nolt* "strongly suggests" that Maryland has adopted a total insuring intent approach contrary to its previously stated rule, it defies reason to suggest that the *Nolt* court would at once explain it has "clearly defined a policy to address 'other insurance' clause conflicts in double coverage cases" and hold *sub silentio* that it materially rejects that "clearly defined policy." (ECF No. 31 ¶ 9.)

June 30, 2026

/s/

_____

Julie R. Rubin
United States District Judge